# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| David W. McCraven, | ) | C/A No. 0:09-1305-RBH-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Michael J. Astrue, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC et seq. The plaintiff, David W. McCraven ("McCraven"), brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying his claims for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").

## ADMINISTRATIVE PROCEEDINGS

On April 19, 2004, McCraven applied for DIB and SSI. McCraven's application was denied initially and on reconsideration and he requested a hearing before an administrative law judge ("ALJ"). A hearing was held on July 3, 2007 at which McCraven appeared and testified without counsel. The ALJ, after hearing the testimony of a vocational expert, issued a decision dated August 30, 2007 finding that McCraven was not disabled.

McCraven was fifty-seven years old at the time of the ALJ's decision. He has a ninth grade education and a General Equivalency Diploma. (Tr. 210.) He has past relevant work experience performing telephone and cable television installation as an independent contractor, as a security

guard, and as a salesperson. (Tr. 69, 211, 213.) McCraven alleges disability since November 23, 2003 due to manic depression and bipolar disorder. (Tr. 68.)

The ALJ made the following findings and conclusions:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2007.

2. The claimant has not engaged in substantial gainful activity since November 23, 2003, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: manic depression and a bipolar disorder (20 CFR 404.1520(c) and 416.920(c)).

      \*    \*    \*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

      \*    \*    \*

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work involving simple, routine, and repetitive tasks in a low stress and a non productive environment with limited interaction to things or individuals. Specifically, the claimant is unable to work with a large number of co-workers.

      \*    \*    \*

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

      \*    \*    \*

7. The claimant was born on March 17, 1950 and was 53 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).



10.      Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

                \*     \*     \*

11.      The claimant has not been under a disability, as defined in the Social Security Act, from November 23, 2003, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 18-25.)

McCraven filed an appeal and, through hired counsel, submitted comments in support of his claim. (Tr. 12, 199-201.) On March 24, 2009, the Appeals Council denied McCraven's request for review, making the decision of the ALJ the final action of the Commissioner. (Tr. 5-8.) McCraven then filed this action.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). The regulations require the ALJ to consider, in sequence:

(1)      whether the claimant is engaged in substantial gainful activity;

(2)      whether the claimant has a "severe" impairment;

(3)      whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;



(4)      whether the claimant can perform his past relevant work; and

(5)      whether the claimant's impairments prevent him from doing any other kind of work.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers

v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig, 76 F.3d at 589. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775 (4th Cir. 1973).

## ISSUES

McCraven raises the following issues for this judicial review:

Point I:      The ALJ Failed to Properly Weigh the Medical Opinion and Develop the Record for a *Pro Se* Claimant

Point II:     The ALJ Relied Upon Flawed Vocational Expert Testimony

Point [III]:   The ALJ Failed to Properly Evaluate Mr. McCraven's Credibility[.]

(Pl.'s Br., Docket Entry 8.)

## DISCUSSION

**A.    Waiver of Counsel and Development of the Record**

McCraven alleges that the ALJ failed to obtain a knowing and intelligent waiver of McCraven's right to counsel and that as a result, he was prejudiced because the ALJ failed to properly develop the record or evaluate the medical opinions.

A claimant has a statutory right to counsel at social security hearings. 42 U.S.C. § 406; 20 C.F.R. § 404.971. However, the Commissioner "has no duty to insist that [a] claimant have counsel." Marsh v. Harris, 632 F.2d 296, 299 (4th Cir. 1980). Regardless of whether this right is

properly waived, the ALJ has a duty to ensure a claimant receives a full and fair hearing of his claims. Sims v. Harris, 631 F.2d 26, 27 (4th Cir. 1980). This duty includes exploring relevant facts and inquiring into issues necessary for adequate development of the record. Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986). This duty is particularly important where a claimant appears *pro se*. Marsh, 632 F.2d at 299. However, remand is only proper when "the absence of counsel created clear prejudice or unfairness to the claimant." Sims, 631 F.2d at 28.

Based on a review of the record in this matter, the court finds that McCraven was sufficiently advised of his right to counsel and that he knowingly and voluntarily waived this right. When the Social Security Administration ("the Administration") initially denied McCraven's application, it sent a notice of the disapproved claim and advised McCraven of the following:

> **If You Want Help With Your Appeal:**
> You can have a friend, lawyer, or someone else help you. There are groups that can help you find a lawyer or give you free legal services if you qualify. There are also lawyers who do not charge unless you win your appeal. Your local Social Security Office has a list of groups that can help you with your appeal.

(Tr. 53.) McCraven requested reconsideration of this denial without assistance from a representative. (Tr. 51.) Upon denying McCraven's request for reconsideration, the Administration informed McCraven of his right to appeal by requesting a hearing before an ALJ and again informed him that "[i]n having your case heard, you can represent yourself or be represented by a lawyer, a friend, or any other person. Contact your Social Security Office for names of organizations that can help you." (Tr. 49.) McCraven filed a request for a hearing before an ALJ without assistance. (Tr. 44.) The Administration sent McCraven a letter acknowledging receipt of his request that included a section notifying McCraven again of his right to representation and further advising him that "[i]f you decide to have a representative, you should find one immediately so that he or she can start preparing your

PJG

case." (Tr. 42.) At the hearing, the ALJ stated, "Mr. McCraven, you were advised that you had the right to have an attorney or other representative, and you are appearing without one. Are you willing to go ahead with the hearing this morning?" (Tr. 206.) The parties agree that McCraven answered in the affirmative; however, McCraven argues that it is unclear whether he was affirmatively stating that he received and understood his right and wished to proceed or whether he was simply acknowledging that he received the notice. McCraven's argument appears to be based on an exchange between the ALJ and McCraven where after answering in the affirmative McCraven explained that he did not receive the notice of hearing until the Saturday before the hearing scheduled for Tuesday. At the end of the exchange the ALJ stated, "But you got it and you're here." McCraven responded, "Yes, sir. What I, if I could finish, what I would like to do is go ahead with this today, but if I could enter in more records, more current records within this possibility." (Tr. 207.) McCraven also indicated that this request was due to the fact that he only had one day to prepare. The ALJ agreed. Based on this exchange, coupled with the repeated notifications from the Administration, the court concludes that McCraven has not shown that he did not knowingly and voluntarily waive his right to counsel.

Moreover, even if McCraven did not knowingly waive his right to counsel, he has failed to demonstrate that he was prejudiced by the absence of counsel or the ALJ's alleged failure to develop the record. The ALJ is responsible for "develop[ing] [the claimant's] complete medical history for at least the 12 months preceding the month in which [the claimant] file[d] [his] application." 20 C.F.R. §§ 404.1512(d), 416.912(d). However, as stated above, it is the plaintiff's burden of proving disability, and he is responsible for providing evidence to support his application. See 20 C.F.R. §§ 404.1512(a) & (c), 416.912(a) & (c). Where the evidence is inadequate for the ALJ to determine

disability, the ALJ will seek additional evidence by recontacting treating physicians or psychologists or other medical sources to determine if other information is available. See 20 C.F.R. §§ 404.1512(e), 416.912(e). Prejudice results where the ALJ's decision "might reasonably have been different had the evidence been before [him] when the decision was rendered." King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979).

Notwithstanding McCraven's condition, he followed each step of the appeals process through the hearing before the ALJ without representative assistance. McCraven asked the ALJ if he could submit additional medical records after the hearing. The ALJ agreed and McCraven did in fact submit additional records. Further, the ALJ asked detailed questions probative of the ultimate issue of McCraven's allegations of disability, which for the most part McCraven answered clearly and responsively. Additionally, the ALJ questioned and received testimony from McCraven's wife. McCraven has failed to specifically identify any prejudice resulting from the absence of counsel during the hearing.

With regard to McCraven's allegations concerning the ALJ's failure to request his medical records from Dr. David A. Paulson, McCraven's treating physician, and the ALJ's failure to request clarification from Dr. Paulson concerning his opinion, the court finds that McCraven similarly has failed to demonstrate prejudice. In support of his argument on this point, McCraven first notes that a December 2006 medical record from Dr. Paulson indicates that McCraven was not having tremors since his Lithium had been reduced, (see Tr. 191); however, there are no treatment notes from Dr. Paulson reflecting that McCraven suffered from tremors or that his medication was reduced. Further, McCraven notes that he testified at the hearing that while he was housed at a detention center in 2006, he met with Dr. Paulson. McCraven contends that this medical record and his testimony

PJG

indicate that notes of Dr. Paulson are missing. McCraven argues that these missing notes prejudiced McCraven because the ALJ discounted Dr. Paulson's opinion based in part upon his finding that Dr. Paulson "has not provided sufficient documentation to substantiate his opinion" and based on a contradiction between Dr. Paulson's opinion and his December 2006 treatment notes.[1] (Tr. 24.) Additionally, McCraven argues that the ALJ should have sought clarification on the "contradiction" in Dr. Paulson's notes, which indicates that McCraven is relatively asymptomatic in a low demand environment. Therefore, McCraven argues that the ALJ had duty to recontact Dr. Paulson and further develop the record. McCraven argues that the ALJ should have done this particularly in light of the weight that is typically accorded to the opinion of a treating physician.

The Commissioner argues, and the court agrees, that this argument is entirely speculative. Following the hearing, McCraven submitted a December 2006 treatment note from Dr. Paulson, a letter dated July 17, 2007 from Dr. Paulson, and a duplicate of a letter already in the record dated October 12, 2004 from Dr. Paulson. (Tr. 191-93.) Further, on appeal before the Appeals Council, McCraven through counsel submitted an additional progress note from Dr. Paulson dated March 31, 2008. No additional treatment records were submitted to the Appeals Council. Other than speculating that additional records exist and that these records may (or may not) support Dr. Paulson's opinion, McCraven has failed to demonstrate that these records, if they exist, might reasonably change the ALJ's decision. See Bell v. Chater, No. 95-1089, 1995 WL 347142 (4th Cir. June 9, 1995) (Table) (holding that "any failure on the part of the ALJ to ferret out additional information did not constitute reversible error" where "[t]he ALJ had before him sufficient facts to

---

[1] Within this argument McCraven also appears to argue that the ALJ erred in applying the treating physician rule, which the court has addressed separately below.



determine the central issue of disability[] and [the claimant] failed to indicate how these unidentified reports would have impacted the assessment"). Accordingly, even if the ALJ failed to obtain these alleged records, McCraven has failed to demonstrate prejudice and therefore he is not entitled to a remand.

**B.    Treating Physician**

By letter dated October 12, 2004 and reiterated by letter dated July 17, 2007, Dr. Paulson opined, "At this point, I think that [McCraven] lacks the emotional resilience to tolerate ordinary stress in a competitive work setting and to maintain appropriate pace and persistence." (Tr. 187; see also Tr. 192-93.) Dr. Paulson further stated that "[his] clinical sense is that [McCraven] is relatively asymptomatic under low demand conditions, but that he rapidly becomes more symptomatic with increased adaptive demand." (Tr. 187.) In Dr. Paulson's July 17, 2007 letter, he observed that McCraven was "relatively well-controlled" at his last visit; however, Dr. Paulson stated that he believes that McCraven is "extremely fragile and has substantial vulnerability to serious relapse." (Tr. 192.) Additionally, Dr. Paulson declared that McCraven is "permanently and totally disabled." (Id.)

Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). However, "the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam). Rather, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant,

(3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001).

In this case, the ALJ discounted Dr. Paulson's opinion, stating the following:

> I acknowledge the opinion of Dr. Paulson who opined that the claimant lacked the resilience to tolerate competitive employment. However, I note that Dr. Paulson has not provided sufficient documentation to substantiate his opinion. In fact, Dr. Paulson contradicts his own opinion as he admits that the claimant is relatively asymptomatic in a low demand environment.

(Tr. 24.) McCraven argues that the ALJ erred in discounting Dr. Paulson's opinion because it "was well-supported by acceptable clinical psychiatric examinations" and not inconsistent with any other examining source. (Pl.'s Br. at 13, Docket Entry 8 at 14.) Specifically, McCraven asserts that Dr. Paulson's opinion was consistent with the opinion of Dr. Deanna S. McNeil, who performed a consultative psychiatric examination of McCraven. (See Tr. 183-86.) McCraven relies on the fact that Dr. McNeil assigned McCraven a Global Assessment of Function ("GAF")[2] rating of 40. He also alleges that "Dr. McNeil opined that Mr. McCraven had intermittent difficulty attending to activities of daily living such as dressing and grooming on a routine basis, and difficulty performing normal household chores secondary to frequent forgetfulness and difficult[y] focusing on completing

---

[2] The American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, fourth edition ("DSM-IV"), contains a numeric scale (0 through 100) used to rate the severity of psychological symptoms and/or social, occupational, or school functioning. According to the DSM-IV, a GAF score between 31 and 40 may reflect "[s]ome impairment in reality testing or communication" or a "major impairment in several areas such as work, school, family relations, judgment, thinking, or mood." Id. at 34. A GAF score may reflect the severity of symptoms or impairment in functioning at the time of the evaluation. Id. at 32-33.

PJG

a task." (Pl.'s Br. at 13, Docket Entry 8 at 14; see also Tr. 185.) Finally, McCraven asserts that Dr. McNeil "reported that Plaintiff had intermittent irritability, poor frustration tolerance, an overreaction to stressors, and psychotic symptoms that adversely impacted Mr. McCraven's ability to relate to others." (Id.) However, a review of Dr. McNeil's opinion reveals that while both of these statements were included under the section entitled "Clinical Functional Assessment," each of these statements was preceded by the phrase "*the patient noted*." (Tr. 185) (emphasis added). Additionally, under that same heading Dr. McNeil indicated that "impression regarding ability to concentrate was limited to simple tasks." (Id.) Moreover, the ALJ specifically considered these notes in his decision along with McCraven's own testimony concerning his activities of daily living and social functioning. (Tr. 21.)

    As stated above, the ALJ is not required to give a treating physician's opinion controlling weight and may accord it less weight for a variety of reasons. Hunter, 993 F.2d at 35; Johnson, 434 F.3d at 654. In this case, the ALJ discussed in detail the medical evidence and testimony presented and provided explicit reasons for not accepting all of Dr. Paulson's opinions. McCraven repeatedly argues that the ALJ should have recontacted Dr. Paulson; however, for the reasons discussed above, he has failed to demonstrate prejudice by this failure. Moreover, the ALJ "is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record," and McCraven has failed to demonstrate that this record is incomplete. Clark v. Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994) (cited in Bell v. Charter, No. 95-1089, 1995 WL 347142 *4 (4th Cir. 1995) (Table)). Additionally, McCraven has failed to point to any medical evidence which would support the functional limitations opined by Dr. Paulson; rather, he points out Dr. McNeil's recording of McCraven's self-reported limitations and Dr. McNeil's GAF, which is merely a snapshot of a

condition at one point in time.  See Parker v. Astrue, 664 F. Supp. 2d 544, 557 (D.S.C. 2009) (stating that "Plaintiff's GAF score is only a snapshot in time, and not indicative of Plaintiff's long term level of functioning"); DSM-IV, supra n.2.  Moreover, McCraven does not contest that Dr. Paulson's treatment records revealed no functional restrictions until he issued the opinions at issue; however, he appears to argue that this is not surprising given that treatment notes are generally not prepared in anticipation of litigation.  (Pl.'s Reply Br. at 3, Docket Entry 10 at 3.)  While mental disorders may be inherently difficult to assess, as stated above, on review the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]."  Craig, 76 F.3d at 589.  Even accepting McCraven's arguments as correct, the court is not persuaded that the ALJ's conclusions are unsupported.  Blalock, 483 F.2d at 775 (4th Cir. 1973) (stating that even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence).  Accordingly, upon review of the medical evidence and the ALJ's decision, the court finds substantial evidence to support the ALJ's decision to accord Dr. Paulson's opinion less than full weight.[3]  See, e.g., 20 C.F.R. §§ 404.1527(e), 416.927(e) (stating that opinions that a claimant is "disabled" or "unable to work" are reserved to the Commissioner); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) (upholding the ALJ's finding that two treating physicians' opinions were entitled to minimal weight,

---

[3] To the extent that McCraven also includes an argument that the ALJ erred in giving substantial weight to the state agency medical consultants based on his assertion that it is unclear what records that consultant reviewed and based on case law stating that "the findings of non-examining physicians do not constitute substantial evidence when they are contradicted by all of the other evidence in the record," the court finds that McCraven has failed to support this argument. (See Pl.'s Br. at 14, Docket Entry 8 at 15.)

in part because the opinions were in the form of a checklist, unsupported by objective evidence, and based on the claimant's subjective complaints).

## C.     Vocational Expert Testimony

McCraven next argues that the testimony of the vocational expert was flawed. McCraven appears to argue that the ALJ erred in failing to resolve conflicts between the vocational expert's testimony that the plaintiff could perform certain jobs and the definition of those jobs as described in the <u>Dictionary of Occupational Titles</u> ("<u>DOT</u>") as required by SSR 00-4p. In response to the ALJ's hypothetical question containing the limitations included in McCraven's residual functional capacity, the vocational expert responded that McCraven would be able to perform the medium unskilled jobs of a commercial cleaner, a laundry worker, and a dish washer, as well as the light unskilled job of a machine tender.[4] The vocational expert provided the number of these jobs available in the local and national economy.

McCraven specifically argues that a review the <u>DOT</u> "strongly suggests" that the requirements of the jobs given by the vocational expert are directly contraindicated by McCraven's functional limitations as determined by the ALJ. (<u>See</u> Pl's Br. at 16, Docket Entry 8.) For example, McCraven argues that the <u>DOT</u> defines (1) commercial cleaner (DOT # 381.687-014, 1991 WL 673257) as exertionally heavy work, which is inconsistent with the ALJ's finding that McCraven could perform medium work; (2) laundry worker I (DOT # 361.684-014, 1991 WL 672983) as working in an establishment washing and selling linens to laborers, which is inconsistent with the

---

[4] Neither the ALJ nor the vocational expert specified <u>DOT</u> entry numbers for these jobs. To the extent that McCraven suggests that this constituted reversible error, the court is not persuaded. <u>See</u>, <u>e.g.</u>, <u>Whitehouse v. Sullivan</u>, 949 F.2d 1005, 1007 (8th Cir. 1991) (holding that a vocational expert was not required to correlate his testimony regarding the number of jobs that the claimant could perform, which was based on broad state job summaries, with more specific <u>DOT</u> job titles).



restriction of limited interaction with persons; (3) laundry worker II (DOT # 361.684-014, 1991 WL 672983) as requiring tending to things, which was inconsistent with the restriction of "limited interaction to things;" and (4) laundry worker III (DOT # 369.387-010, 1991 WL 673053) as semi-skilled, which is beyond McCraven's residual functional capacity. With regard to dish washer and machine tender, McCraven argues that these are not specific job titles listed in the DOT; therefore, it is unclear whether McCraven could perform these jobs.

As an initial matter, the ALJ provided a detailed hypothetical question to the vocational expert, to which he responded with four potential jobs. With each response the vocational expert explicitly stated that the identified job was either medium unskilled or light unskilled, confirming the exertional and skill level for each job he described. Additionally, the ALJ confirmed that the first two jobs listed were medium and unskilled, to which the vocational expert responded affirmatively. (Tr. 234.) Moreover, the DOT itself contains a disclaimer "noting that it provides only 'composite descriptions of jobs as they may typically occur.' [Thus, t]he descriptions listed in the dictionary 'may not coincide with a specific job as actually performed in a particular establishment or any given industry.' " Barker v. Shalala, 40 F.3d 789, 795 (6th Cir. 1994) (quoting the DOT); see also Fenton v. Apfel, 149 F.3d 907, 911 (8th Cir. 1998) ("[T]he DOT in its job definition, represents appropriate maximum requirements for each position rather than the range."). Therefore, the court finds that it was not inappropriate for the ALJ to rely on the vocational expert's testimony based on the expert's qualifications and the specific nature of the testimony.

Moreover, even if the vocational expert erred in stating that McCraven could work as a commercial cleaner because it is listed as exertionally heavy work, the Commissioner still met its burden to demonstrate that McCraven can perform alternative jobs that exist in the national

PJG

economy. McCraven has incorrectly listed the requirements for laundry worker I (DOT # 361.684-014, 1991 WL 672983) to include selling linens to laborers and arguing that it is inconsistent with limited interaction with persons. A review of the <u>DOT</u> reveals that this job includes no such requirement. The vocational expert testified that there were 7,000 laundry worker jobs in South Carolina and 280,000 nationally, which is more than sufficient to satisfy this burden. <u>See</u> <u>Hicks v. Califano</u>, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979) (noting that as few as 110 jobs constitute a significant number within the economy for purposes of satisfying Step Five under the sequential evaluation analysis).

McCraven also argues, relying on SSR 85-15, that the ALJ failed to indicate how limiting McCraven to low stress, routine work away from a production line would impact McCraven's occupational base. SSR 85-15 simply recognizes that individuals with mental impairments may have additional difficulties or individualized reactions in performing certain duties that the ALJ should consider. In this case the ALJ limited McCraven to not only "low stress," but also "non-production" work, which the ALJ described at the hearing as "ruling out factory work, for instance, assembly line work, where speed and production pressures would be built into the jobs[,] requiring basically simple routine[,] repetitive jobs of a low-stress nature." Therefore, the court finds that McCraven has failed to demonstrate that the ALJ committed any error.

Based on the foregoing, the court finds that viewing the record as a whole, the ALJ's finding that McCraven had the residual functional capacity to perform jobs in the national economy is supported by substantial evidence.

**D.      McCraven's Credibility**

Finally, McCraven contends that the ALJ incorrectly assessed McCraven's credibility.  In evaluating subjective complaints, the United States Court of Appeals for the Fourth Circuit has stated that "the determination of whether a person is disabled by pain or other symptoms is a two-step process."  Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).  In this matter only the second step is at issue,[5] during which the ALJ must expressly consider "the intensity and persistence of the claimant's [symptom] and the extent to which it affects [his] ability to work."  Id.

In applying the second step, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."  (Tr. 23.) Thus, the issue is whether the ALJ properly evaluated McCraven's subjective complaints regarding the intensity and persistence of his symptoms and the extent to which they affect his ability to work. See Craig, 76 F.3d at 594.  In making these determinations, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  SSR 96-7p. "[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded *solely* because they are not substantiated by objective medical evidence."  Id. (emphasis added).  "This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's [symptom] and the extent

---

[5] The first step requires there to "be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged."  Craig, 76 F.3d at 594 (internal quotation omitted).

to which it impairs [his] ability to work." Craig, 76 F.3d at 595. A claimant's subjective complaints "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges [he] suffers." Id. Further, "[i]n analyzing a claimant's subjective complaints, such as pain, an ALJ must consider: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the condition; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions." Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (citing Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984)).

In this case, the ALJ expressly considered several factors in discounting the credibility of McCraven's subjective complaints, including not only McCraven's testimony but also the medical and non-medical evidence. (Tr. 12-13.) Specifically, the ALJ noted that (1) McCraven is able to care for his personal needs, think, communicate, act in his own interests, and get along with others; (2) McCraven has received sporadic treatment over the years; (3) Dr. Paulson indicated that McCraven was relatively asymptomatic under low demand conditions; (4) the record demonstrates that compliance with his medications has proven beneficial to McCraven's overall mental health and well-being; and (5) McCraven testified that he slept and ate normally and spent time at home surfing the internet and looking for work opportunities. (Tr. 23.)

In arguing that the ALJ erred in discounting McCraven's credibility, McCraven challenges the reasons articulated by the ALJ. First, McCraven contends that the ALJ erred in developing the record with regard to McCraven's treatment. For the reasons stated above, McCraven has failed to demonstrate prejudice; therefore this argument fails. Second, McCraven argues that the frequency

of treatment is an inappropriate consideration in light of McCraven's financial situation and that the nature of his disorder may impact his capacity to seek treatment. However, McCraven has failed to demonstrate that this in fact obstructed his ability to receive treatment; in fact, McCraven testified that he saw Dr. Paulson "as needed." (Tr. 219.) Finally, McCraven appears to allege that the ALJ's finding that McCraven is able to care for his personal needs, think, communicate, act in his own interests, and get along with others was supported only through a reliance on selective portions of the record. McCraven then proceeds to cite to other selective portions of the record which McCraven argues supports his credibility.

Upon a thorough review of the record as a whole, the court finds that the ALJ conducted a proper analysis in determining the credibility of McCraven's subjective complaints of pain. See Craig, 76 F.3d at 595; Gowell, 242 F.3d at 796. In determining that McCraven's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible, the ALJ considered McCraven's subjective complaints in conjunction with his abilities to perform daily activities and the medical evidence. Further, there is substantial evidence supporting the ALJ's finding that McCraven's complaints regarding the effects of his symptoms are inconsistent with the record. See Gross, 785 F.2d at 1166 (noting that "[i]f a symptom can be reasonably controlled by medication or treatment, it is not disabling"); Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (noting that the absence of ongoing medical treatment can discredit a claimant's allegations); see also Hines, 453 F.3d 565, n.3 (noting that a claimant's allegations "need not be accepted to the extent that they are inconsistent with available evidence . . . ."). Accordingly, the court may not substitute its judgment for the ALJ's. See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that

of the [Commissioner]"); <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence).

## RECOMMENDATION

For the foregoing reasons, the court finds that McCraven has failed to show that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. <u>See Craig</u>, 76 F.3d at 589; <u>see also</u> 42 U.S.C. § 405(g); <u>Coffman</u>, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

May 24, 2010
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).