IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| David W. McCraven,<br>Plaintiff, | Case No. 0:09-cv-1305-RMG-PJG |
| v. | **ORDER** |
| Michael J. Astrue, Commissioner of Social Security Administration<br>Defendant. | |

Through this action, Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security denying Plaintiff's claims for Supplemental Social Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Plaintiff appealed pursuant to 42 U.S.C. §§ 405(g) and 1383 (c). The matter is currently before the court for review of the Report and Recommendation ("Report") of Magistrate Judge Pagie J. Gossett, made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rules 73.02(B)(2)(a) and 83.VII.02, et seq., D. S.C. For the reasons set forth below, the Court declines to adopt the Report and Recommendation, which was filed on May 24, 2010, and reverses and remands the decision of the ALJ for further, expedited, proceedings consistent with this Order.

## STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). The court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made,

Page 1 of 12

and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to him with instructions. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 205(g) of the Act provides, "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir.1964). This standard precludes a *de novo* review of the factual circumstances that substitutes the court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir.1971). The court must uphold the Commissioner's decision as long as it is supported by substantial evidence. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir.1972). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir.1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

The Commissioner's denial of benefits shall be reversed only if no reasonable mind could accept the record as adequate to support that determination. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). The Commissioner's findings of fact are not binding, however, if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir.1987).

# FACTS CONTAINED IN THE RECORD BEFORE THIS COURT

## I.  Mr. McCraven

Mr. McCraven was born on March 17, 1950. He was 53 years old at the time of the alleged disability and 57 years old at the time of his date last insured which "[u]nder Title II [is] . . . [w]hen the person last met the insured status requirement before the date of adjudication, the oldest age to be considered is the person's age at the date last insured." *See* Social Security Ruling ("S.S.R.") 83-10. (*See also* Tr. 209). Plaintiff completed the 9th grade and later obtained his GED (Tr. 210). Mr. McCraven's primary past work experience involved work as an independent contractor engaged in the installation of telephones and cable TV from 1969 (Tr. 213). After 1993 until 2003, Plaintiff had his own satellite business (Tr. 227). Despite the inclusion of Plaintiff's relevant past work experience in the Record, ALJ conceded that Plaintiff is unable to perform any of his past work (Tr. 24). After the date of the alleged onset of his condition(s), Mr. McCraven also worked briefly as a security guard (Tr. 211) but Plaintiff left this job due to stress (Tr. 212). Plaintiff also worked briefly for Radio Shack as a salesperson, where he was terminated after an angry outburst (Tr. 213). The ALJ found that Mr. McCraven had not performed any substantial gainful activity since November 23, 2003 (Tr. 18).

## II.  Medical Record

### A.  David Paulson, M.D. (Treating Psychiatrist)

On February 24, 2004, Plaintiff was seen by Dr. Paulson (Tr. 189-190). Plaintiff reported a prior diagnosis of bipolar disorder with history of psychiatric care since 1975. His first symptom arose during a marital crisis. Mr. McCraven's symptoms were increased grandiosity (thinking he was King David for example (Tr. p. 189)), drug abuse, increased mood, racing thoughts, increased

energy, decreased need for sleep, and increased speaking. He reported treatment benefits with Lithium.

Mr. McCraven subsequently stopped taking Lithium without symptoms. He could not specify the current duration of symptoms except to say he had about 2 months of mania and 1 month of depression. Mr. McCraven reported depressive symptoms of feelings of failure, dysphoria, decreased sleep, and anhedonia. He admitted to a history of drug abuse. A mental status examination revealed a neutral mood, mildly constricted affect, over controlled thinking (rigid/constant), grandiosity, and limited insight (Tr. 190). Dr. Paulson diagnosed bipolar affective disorder NOS (not otherwise specified) with low grade psychotic features and history of polysubstance abuse. The doctor recommended that Mr. McCraven begin a trial of Lithium. Id.

On October 11, 2004, Mr. McCraven returned to Dr. Paulson, accompanied by his wife (Tr. 188). He reported taking Lithium on a regular basis since his last appointment, but at a lower dose than prescribed because it made him feel "cognitively dulled." Mr. McCraven stated that his previous religious ideas resolved, but he continued to experience difficulty with emotional over-reactivity, irritability, and verbal aggression. He also reported disturbed sleep with difficulty falling and staying asleep. Dr. Paulson also noted that Mr. McCraven had a severe conflict at home with his son that contributed to his instability. A mental status examination revealed somewhat subtle grandiose ideas and a slight attitude, and an edgy and irritable mood.

In a letter dated October 12, 2004, Dr. Paulson reported that Mr. McCraven had bipolar mood disorder since 1975 treated intermittently with Lithium (Tr. 187). It was also noted that he had a strong family history of bipolar disease. Dr. Paulson opined that Mr. McCraven's condition resulted in family conflict and vocational disruption. It was noted that he had been unable to maintain

employment because of "anger dyscontrol." (Tr. p. 187). Dr. Paulson opined that Mr. McCraven lacked the emotional resilience to tolerate ordinary stress in a competitive work setting and to maintain appropriate pace and persistence. (Tr. p. 187). The doctor stated that although Mr. McCraven might be asymptomatic under low demand conditions, he "rapidly becomes more symptomatic with increased adaptive demand." (Tr. p. 187). Dr. Paulson noted that it remained to be seen if he could become more stable with treatment. (Tr. p. 187). But his treating physician, Dr. Paulson found Plaintiff to be "impaired by his illness." (Tr. p. 187).

On December 19, 2006, Mr. McCraven stated that he was feeling "generally more stable," but not entirely well (Tr. 191). Mr. McCraven stated that his tremor disappeared when his dose of Lithium was decreased, and since returning home he was using Seroquel at night on an as-needed basis. He reported improvement in anger and appetite, but great difficulties in focus, motivation, and energy. He also reported spending time at home doing very little and having very little success pursuing work. A mental status examination revealed that his demeanor was a bit condescending and a slightly elevated mood.

Dr. Paulson diagnosed "fairly stable" symptoms, but opined that Mr. McCraven may lack the resilience to tolerate competitive employment. In a letter dated July 17, 2007, Dr. Paulson reported that Mr. McCraven was under his care intermittently over the last few years for treatment of bipolar mood disorder (Tr. 192). The doctor noted that Mr. McCraven's illness continued to be "quite disruptive" resulting in hospitalization, incarceration, and financial duress. Dr. Paulson reported that even though Mr. McCraven's condition was relatively well-controlled, "he is extremely fragile and has substantial vulnerability to serious relapse. In my opinion, he lacks the resilience to tolerate the demands and expectations of competitive employment, and is permanently and totally disabled."

(Tr. 192).

On March 31, 2008, Dr. Paulson reported that Mr. McCraven was seen after a relatively long absence from his office (Tr. 202). Both Plaintiff and his wife reported that he was generally unstable for the past couple of years with predominately depressed mood. He was noted to be socially isolative and seldom left home. Mr. McCraven reported he was quite impulsive verbally and often made statements not germane to the topic being discussed. A mental status examination revealed Mr. McCraven was a bit impulsive and tended to interrupt his wife, somewhat depressed mood, subdued affect, and distractible thinking. Dr. Paulson diagnosed continuing bipolar disorder with predominately depressed mood in recent months. The doctor recommended a trial of Wellbutrin, but noted that it was not available to Mr. McCraven because of limited resources. Id. Instead, Dr. Paulson prescribed Lithium and Lexapro (Tr. 203).

B. **Deanna McNeil, M.D. – Social Security Admin. Consultative Psychiatrist**

Dr. McNeil evaluated Mr. McCraven at the request of the Administration on August 16, 2004 (Tr. 183). Mr. McCraven reported depression beginning in 1976 following the stress of a difficult divorce. This was followed by symptoms of hopelessness and helplessness, decreased energy, difficulty focusing on tasks, and fleeting suicidal ideation. He also reported "bizarre behavior and the onset of auditory hallucinations that eventually required hospitalization and resulted in a diagnosis of bipolar disorder. Mr. McCraven stated that he was treated with Lithium and had improvement in his symptoms. *Id.* However, he stated that his chronic symptoms had interfered with occupational functioning and when he last worked in October 2003 he was fired from his job and banned from the store after he threw a cup of water at someone. (Tr. 183-184).

Dr. McNeil documented that Plaintiff spent his days at home. (Tr. p. 184). Mr. McCraven

further reported to Dr. McNeil difficulty attending to activities of daily living, such as getting out of bed and attending to hygiene, minimal chores around the home, lack of involvement in any hobbies, and reported he drove infrequently because of road rage (Tr. 184). Mr. McCraven also admitted to recurrent auditory hallucinations and seeing "bugs" that made it difficult for him to focus on the demands of driving. (Tr. p. 184). Mr. McCraven stated that he continued to receive intermittent psychiatric treatment, but difficulty continuing such treatment because of financial constraints. *Id.* A mental status examination revealed that Mr. McCraven had information prepared in written form of his history and symptoms and that he had to refer to this because of thought blocking, confusion, and difficulty maintaining his focus (Tr. 185). However, he was noted to be over-inclusive and despite attempts at redirection he was insistent that he read from his paper in entirety. Mr. McCraven's mood was hypomanic and he intermittently became circumstantial. Mr. McCraven could only recall 1 out of 3 items after 5 minutes and was uncertain of what to do if he found a stamped, addressed envelope. The examination also noted a history of auditory hallucinations and ideas of reference in which he felt the TV or radio was speaking to him, as well as paranoid ideation. *Id.*

Dr. McNeil opined that Mr. McCraven had intermittent difficulty attending to activities of daily living such as dressing and grooming on a routine basis, and difficulty performing normal household chores secondary to frequent forgetfulness and difficult focusing on completing a task (Tr. 185). Dr. McNeil found that Mr. McCraven was limited to perform only simple tasks and there was no evidence of malingering or embellishment. *Id.* The doctor diagnosed bipolar disorder, occupational problems, problems with primary support system, problems with access to care,

financial problems, and a Global Assessment of Functioning score of 40[1]. (Tr.186). Ongoing psychiatric care was recommended. *Id.*

### C. Paper Reviewing Ph.D.'s

Lisa Smith Klohn, Ph.D., reviewed Dr. McNeil's report and other unspecified records (Tr. 178) on September 1, 2004 and found that Mr. McCraven was moderately limited in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace (Tr. 176). Dr. Klohn noted that Mr. McCraven's allegations were "credible," but that he had not followed through with treatment and found that he could perform unskilled work in a low stress environment without contact with the general public (Tr. 178). Edward Waller, Ph.D., reviewed unspecified medical records on March 11, 2005 and found limitations identical to those of Dr. Klohn (Tr. 154 and 160). Unlike Dr. Paulson and Dr. McNeil, neither chart reviewer, Dr. Klohn and Dr. Waller, had personally observed or examined Mr. McCraven.

---

[1] The Global Assessment of Functioning Scale is a numeric scale (0 through 100) used by mental health clinicians and physicians to subjectively rate adults with respect to social, occupational, and psychological function. The scale is presented and described in the DSM-IV Manual. In reviewing that scale, this Court notes for the ALJ that the score range (31-40) in which Mr. McCraven falls into is described as follows:

> **Some impairment in reality testing or communication** (e.g., speech is at times illogical, obscure, or irrelevant) **OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood** (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school).

Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders (DSM-IV)* (4th ed.1994) (emphasis original). The example given by the Manual (i.e. "depressed man avoids friends, neglects family, and is unable to work") is very compelling given the description of Mr. McCraven as provided by Dr. Paulson.

## DISCUSSION

The Magistrate Judge recommends that the court affirm the ALJ's decision. (Dkt. No. 12). On June 7, 2010, Plaintiff filed an objection to this recommendation arguing that the ALJ's conclusions do not accurately reflect or evaluate the medical evidence and treating physicians opinions. (Dkt. No. 13). On June 28, 2010, the Commissioner filed a response to Plaintiff's objection. (Dkt. No. 17). As noted below, this Court agrees with Plaintiff that the ALJ's decision did not accurately reflect the medical record in this matter and proper deference was not given to the Plaintiff's treating and evaluating physicians. As a result, the ALJ's decision is reversed and remanded for further proceedings consistent with this Order and the law.

## INSTRUCTIONS ON REMAND

This Court notes for the ALJ, for further consideration on remand, several compelling matters brought to light by its *de novo* review of the Record. After such instructions are followed, it would appear that a different result may be warranted.

First, the Fourth Circuit has noted that a treating physician's opinion is entitled to great weight and may be disregarded only if persuasive contradictory evidence exists to rebut it. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Coffman v. Bowen*, 829 F.2d 524, 527 (4th Cir. 1988)). The Regulation on this subject at 20 C.F.R. § 404.1527(d) and § 416.927(d) states:

> Generally, we give more weight to opinions by your treating source . . . If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

Citing this Regulation, in *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006), the Fourth Circuit held:

The ALJ was obligated to evaluate and weigh medical opinions "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." (internal citations and quotations omitted).

The Record demonstrate that Dr. Paulson's opinion was well-supported by medically acceptable clinical psychiatric examinations, and not inconsistent with any other similarly qualified source that physically examined the claimant. However, the ALJ gave Dr. Paulson's opinion "less weight" (Tr. 24). The ALJ opined that Dr. Paulson's opinion contradicted his own notes that Mr. McCraven was relatively asymptomatic in a low demand environment. *Id.* But it should be noted that the fact that Dr. Paulson reported Mr. McCraven was sometimes asymptomatic when in a controlled environment at home is hardly inconsistent with a finding that he is disabled and should not work. For instance, it is entirely consistent to say that a man who was terminated from his last position because he threw a cup of water at a co-worker and limits his driving because of road rage is too unstable to function in the work place even though he remains fragilely stable isolated at home. Thus, Dr. Paulson's opinion was entitled to deference as a matter of law. Therefore, the ALJ is directed to the Fourth Circuit's holdings regarding deference to the treating physician and also consider the factors outlined in *Hines*.

Second, Dr. Paulson's opinion appears to be consistent with the government's examining psychiatrist, Dr. McNeil. Dr. McNeil opined that Mr. McCraven had intermittent difficulty attending to activities of daily living such as dressing and grooming on a routine basis, and difficulty performing normal household chores secondary to frequent forgetfulness and difficult focusing on completing a task (Tr. 185). Plaintiff had intermittent irritability, poor frustration tolerance, an overreaction to stressors, and psychotic symptoms that adversely impacted Mr. McCraven's ability

to relate to others. *Id.* However, it would appear from the Record that the ALJ failed to mention what weight, if any, he gave to the government's psychiatrist, Dr. McNeil, in light of her physical examination and findings. On remand, the ALJ should provide an analysis as to the weight he gave the government's examining doctor and should note that her findings were consistent with those of Plaintiff's treating physician.

Third, it appears that the ALJ deferred to the non-examining medical consultants that reviewed unspecified medical records and their findings were contrary to the findings of both the treating and examining doctors. As a result, the ALJ is directed to the Fourth Circuit decisions which have repeatedly held that the findings of non-examining physicians do not constitute substantial evidence when they appear to be contradicted by all of the other evidence in the record. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986) (citing *Hayes v. Gardner*, 376 F.2d 517, 520-521 (4th Cir. 1967) and *Martin v. Secretary of Health, Education, and Welfare*, 492 F.2d 905, 908 (4th Cir. 1974)).

Fourth, it should be noted by the ALJ that Dr. Paulson and Dr. McNeil are medical doctors specializing in psychiatry, who have completed residency in psychiatry, and are Board Certified in Psychiatry. In the course of their medical practices they are able to prescribe medications to assist in management of bi-polar disorder. The chart reviewers, Lisa Smith Klohn, Ph.D. and Edward Waller, Ph.D., are psychologists who have not attended medical school or completed a psychiatric residency, and are not Board Certified. Moreover, they do not have the necessary license to prescribe medication under South Carolina law needed to properly manage and treat bi-polar disorder. While psychologists have much to offer in Social Security matters, proper weight must be given to the treating psychiatrist's opinion when the psychologist, as chart reviewers, offer opinions conflicting

with the treating and evaluating physicians who are Board Certified in Psychiatry on matters related to medication management and mental illness. *See Carson v. Astrue*, 2008 WL 2148784 (W.D. Wash. May 21, 2008) (remanding the matter where a licensed psychologist unable to proscribe medications testified as to possible side effects of medications because the testimony appeared to be outside his area of expertise).

Given the above points, found in the Record in this Court's thorough review, this Court reverses the decision of the ALJ to deny benefits and remands for proceedings consistent with this Order, the law cited herein, and the Record.

## CONCLUSION

Based on the above findings, this Court's *de novo* review of the Record, the submissions of the parties, and the oral arguments before this Court, this matter is reversed pursuant to sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3) and remanded to the ALJ for further administrative proceedings consistent with this Order. Further, the ALJ is ordered to hold an ***expedited** de novo* hearing and issue a prompt decision as to Plaintiff's eligibility for SSI and DIB. *See Holmes v. Astrue*, 2010 WL 960415 (D.S.C. March 12, 2010) (reversing and remanding for an expedited hearing).

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

September 28, 2010
Charleston, South Carolina